IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | NO. 12-30098 |
| ) | |
| LEON DINGLE, JR. and KARIN ) | |
| DINGLE, ) | |
| ) | |
|     Defendants. ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court is Defendant Leon Dingle Jr.'s Consolidated Motion in Limine [d/e 64]. The Government filed a Response [d/e 76] and the Defendant filed a Reply [d/e 83]. Additionally, the Court heard oral argument on the Motion at a Hearing on October 1, 2014.

I.

Along with two other Defendants, Leon Dingle, Jr. and Karin Dingle were indicted and charged with conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 371, 1341; mail fraud, in violation of 18 U.S.C. § 1341; and money laundering, in violation of 18 U.S.C. § 1957(a). The

jury trial is set to begin on October 20, 2014.

Dr. Dingle's consolidated motion in limine pertains to a number of issues. The Government's response includes a summary of its anticipated evidence. The motion in limine seeks the exclusion of (1) any arguments appealing to jurors as taxpayers; (2) any evidence and arguments referencing former Governor Rod Blagojevich; and (3) evidence and arguments regarding allegations of Dr. Dingle's infidelity.

Because arguments that appeal to jurors' pecuniary interests are improper, see United States v. Martel, 792 F.2d 630, 637 (7th Cir. 1986), that portion of the Defendant's motion will be Allowed.

II.

The Defendant also seeks the exclusion of any evidence and arguments referencing former Governor Rod Blagojevich and his creation of certain programs or involvement with State of Illinois grant funds. According to the Defendant, any such evidence is extremely prejudicial and must be excluded under Rule 403 of the Federal Rules of Evidence. Rule 403 provides, "The court may exclude relevant evidence if its probative

value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The Defendant contends that Blagojevich's public corruption conviction and 14-year sentence are well known to Illinois citizens and would "undoubtedly influence" the jurors' decision. The Government is not asserting that Blagojevich engaged in impropriety in connection with this case. The Defendant claims that the simple mention of Blagojevich's name will prejudice the jury against Dr. Dingle, the Illinois Department of Public Health and many of the Government's witnesses. Moreover, the Defendant contends that precluding the jury from mentioning the former Governor's name would not prejudice the Government's ability to effectively present its case.

The Government asserts that the Blagojevich administration was involved in the creation of the grant programs or allocation of grant funds which are at issue in this case. This includes BASUAH (Brothers And Sisters United Against HIV/AIDS) and the Faith-Based Initiative. The

Government states that in 2005, Blagojevich announced the creation of BASUAH, a social marketing program designed to reach the African-American community with education, prevention and testing.  In 2007, Blagojevich announced the Faith-Based Emergency Preparedness Initiative, which leveraged federal funding to work with public entities and religious organizations to enhance preparedness against major emergencies, including natural disasters and pandemic flu outbreaks.  The Illinois Department of Public Health (DPH) implemented both programs.  DPH was part of the Blagojevich administration.  The Government notes that he appointed the DPH directors and one of Blagojevich's deputy governors was involved with DPH in decisions pertaining to grant funding.  Significantly, the Government contends Dr. Dingle had established relationships with members of the administration, including Blagojevich himself, the DPH director and its Chief of Staff.  Additionally, the Government claims Dr. Dingle bragged about his relationship with Blagojevich.

The Government asserts the evidence is relevant as not only background information concerning grant programs but also Dr. Dingle's

state of mind, his relationship between administration officials and whether his access to such officials was merit based.

Upon reviewing the summary of the evidence the Government anticipates presenting, the Court concludes that the evidence meets the relevancy standard articulated in Federal Rule of Evidence 401. The question under Federal Rule of Evidence 403 is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or other concerns.

Although relevant evidence is often prejudicial, it is only unfair prejudice that requires exclusion. See Fed. R. Evid. 403; United States v. Boros, 668 F.3d 901, 909 (7th Cir. 2012). Evidence is unfairly prejudicial if it would cause the jury to decide the case on an improper or irrational basis, such as by appealing to the jury's emotions. See United States v. Miller, 688 F.3d 322, 327 (7th Cir. 2012). As the probative value of evidence increases, a court is more likely to tolerate a risk of prejudice. See Boros, 668 F.3d at 909. If the evidence has little probative value, it should not be introduced unless the risk of prejudice is even more remote. See id.

Of course, the Court recognizes there is a stigma surrounding the name and administration of Blagojevich. The Defendant suggests to simply refer to "the Governor" when discussing the creation and implementation of BASUAH and the Faith-Based initiative and prohibiting the Government from mentioning or implying that the programs came out of the Blagojevich administration. Because it does not find a significant risk of prejudice in mentioning the former Governor's name when discussing the programs he created and/or implemented, the Court concludes it is unnecessary to prohibit the mention of "Blagojevich."

The Court does not believe that the evidence is unfairly prejudicial or otherwise subject to exclusion under Rule 403. The Court trusts that the Government will not unnecessarily emphasize the name "Blagojevich." Because the Blagojevich administration appears to be integral to the Government's theory of the case, however, the Court believes that pretending that Blagojevich was not Governor at the time in question is impractical and unnecessary. Moreover, it is likely that dates will be mentioned in discussing the programs. The Court believes that some, if not

most, jurors would know the identity of "the Governor" in 2005, 2006 or 2007. Therefore, it is doubtful that granting the Defendant's request would achieve the desired end.

The Court trusts that the jury will decide the case based on the evidence presented and will not be unduly swayed by the mention of "Blagojevich." Because the probative value of the evidence is not outweighed by the danger of unfair prejudice or any other reason, however, the Court declines to prohibit the utterance of the former Governor's name under Rule 403. Should the Defendants request, the Court will consider an appropriate limiting jury instruction.

The Defendant's motion in limine will be Denied, to the extent that he seeks the exclusion of evidence relating to or the mention of former Governor Blagojevich.

III.

Next, the Defendant seeks the exclusion of evidence and arguments regarding allegations of Dr. Dingle's infidelity. The Defendant seeks the entry of an Order precluding the Government from arguing or otherwise

presenting evidence or pursuing lines of inquiry designed to elicit such information or otherwise reference allegations of Dr. Dingle's infidelity with any of the witnesses and/or other individuals it claims are or are not involved in the instant case. The Defendant claims such information has no tendency to make the existence of any fact that is of consequence in this case more or less probable than it would be without the evidence. Consequently, it is not relevant under Rules 401 and 402.

Dr. Dingle contends the allegation of infidelity would serve only to bias the jury against him as a bad husband. This is particularly true in this case because Dr. Dingle's wife is a co-Defendant. He contends the alleged infidelities are entirely irrelevant to establish any element of mail fraud, money laundering or any other charge contained in the Indictment. Although he claims the evidence is not at all relevant, Dr. Dingle asserts that even if there is some relevancy, its probative value is outweighed by the danger of unfair prejudice and must be excluded under Rule 403.

The Government states it does not seek to introduce evidence of Dr. Dingle's infidelity in order to appeal to the jury's emotions or to establish

that he is a bad husband. Instead, the Government seeks to present evidence relating to Dr. Dingle's personal relationships, whether sexual or not, with individuals responsible for awarding or providing him with millions of dollars in state grant funds. The Government claims this evidence is highly relevant and critical to its case.

Quinshaunta Golden was hired as the Chief of Staff at DPH in or about late 2003 and continued in that position until early 2008. She was responsible for identifying the recipients of DPH grants and the amount of those grants. The Government alleges that, in that capacity, Golden steered a substantial amount of the $11,000,000 in grant funds to Dr. Dingle through Broadcast Ministers Alliance of Chicago (BMA), a not-for-profit organization established in 1975 and consisting of a faith-based alliance of various Chicago-area minsters; Access Wellness and Racial Equity NFP (AWARE), a not-for-profit organization established in 2007 by CJ, a medical doctor and female associate of Dr. Dingle; and Medical Health Association NFP (MHA), a not-for-profit organization which was established in 2008 by a close friend and the personal medical doctor for

9

Dr. Dingle. MHA provided medical consulting services.

The Government claims one witness, MA, will testify about observing what appeared to be a sexual encounter between Dr. Dingle and Golden in Golden's office. It contends that his "unique and non-merit based relationship with Golden, an alleged co-conspirator and the very person responsible for steering grant funds to [Dr. Dingle], is relevant to establishing his involvement in the alleged conspiracy and his intent to defraud in diverting grant funds to his personal benefit and to the benefit of [Roxanne] Jackson, another alleged co-conspirator." According to the Government, Dr. Dingle–at Golden's direction–willingly diverted to Jackson more than $500,000 in grant funds originally awarded to BMA, AWARE and MHA.

The Government further alleges that when the sexual nature of Dr. Dingle's relationship with Golden became known by MA, they offered MA a $10,000 bonus, which Dr. Dingle paid. Citing United States v. Reese, 666 F.3d 1007, 1016 (7th Cir. 2012), the Government asserts the evidence is relevant to show the relationship between a Defendant and alleged co-

conspirator.

The Defendant contends the allegation by MA regarding a sexual encounter between Dr. Dingle and Golden was made on the eve of trial in August of 2014–several years after MA was first interviewed by case agents. The Court concludes that this information regarding when the statement was made goes to the weight of the evidence and not its admissibility.

Dr. Dingle further contends such evidence must be excluded under Rule 404(b), which provides: "Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The Court does not believe these allegations constitute "Crimes, Wrongs, or Other Acts" to the extent that the Court must consider the evidence based on the standard announced in United States v. Gomez, 763 F.3d 845 (7th Cir. 2014). The Government seeks to present this evidence of the nature and extent of the relationships Dr. Dingle had with individuals who controlled the grant money. It is not attempting to prove that by engaging in these acts, Dr. Dingle was acting

in accordance with his character.

The Defendant contends the evidence is not relevant and even if there is marginal relevance, any probative value is outweighed by the danger of unfair prejudice.

The Government also claims Dr. Dingle was in a dating relationship with CJ, AWARE's owner. It seeks to introduce this evidence not simply to show infidelity but to establish Dr. Dingle's personal relationship with the witness and control over AWARE's grant funds. See United States v. Holt, 460 F.3d 934, 938 (7th Cir. 2006) ("The sexual relationship also provided background for the jury, as it might have explained the hold that Holt had over a woman twenty years or so his junior"). The Defendant acknowledges the evidence as to CJ might have marginal relevance. However, it is of minimal probative value and the risk of unfair prejudice is significant.

The Court is confident the Government is not attempting to present this evidence to inflame the jury's passions or establish that Dr. Dingle might be a bad husband. Upon reviewing the Government's proposed

evidence, the Court believes the allegations of infidelity have some relevance. The Government is attempting to establish the type of relationships Dr. Dingle had with individuals who controlled the grant money. The allegations are that he had personal relationships of this nature with a number of women who were in control of state money. It would be difficult for the Government to present its theory of the case without some reference to the nature of these relationships.

Having determined that the evidence has significant probative value and is important for the Government to be able to present its theory of the case, the Defendant must show that the degree of unfair prejudice or other concerns outweigh this relevance. The Court concludes that Defendant has not met this standard. Although the fact that Mrs. Dingle will be present as a co-Defendant may slightly increase the risk of prejudice to Dr. Dingle, the Court does not believe the allegations of infidelity are unfairly prejudicial. The Court has no reason to believe the allegations will cause a jury to decide the case on an improper or emotional basis, rather than on the evidence presented.

Accordingly, the Court is unable to conclude that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

IV.

The Defendant's motion will be Allowed to the extent that it seeks the exclusion of any arguments appealing to jurors as taxpayers.  It is Denied to the extent that it seeks the exclusion of any evidence and arguments relating to former Governor Rod Blagojevich.  The motion is also Denied to the extent that it seeks the exclusion of any evidence and arguments regarding allegations of Dr. Dingle's infidelity.

Of course, the Defendants remain free to make any appropriate objections at trial.

Ergo, the Consolidated Motion in Limine of Defendant Leon Dingle, Jr. [d/e 64] is ALLOWED in part and DENIED in part, as provided in this Opinion.

ENTER: October 14, 2014

FOR THE COURT:

s/Richard Mills
                                             Richard Mills
                                             United States District Judge